JOHNSON BROS. OIL COMPANY v.
DONALD CHIES AND OTHERS.

199 N. W. 2d 441.

June 23, 1972—No. 42847.

 

---

*Sokolowski & Peterson* and *Douglas J. Peterson,* for appellants.

*Smith, Juster, Feikema, Haskvitz & Casserly* and *Wyman W. Smith,* for respondent.

Heard before Knutson, C. J., and Todd, MacLaughlin, and Gunn, JJ.

WILLIAM D. GUNN, JUSTICE.*

This is an action to recover money on an account. The trial court found the defendants individually liable for the debt and entered findings of fact, conclusions of law, and an order for judgment to that effect. The defendants appeal from the judgment and from an order denying their motion for an order vacating the judgment and granting a new trial.

Some of the facts in this case are not seriously contested. Defendants Donald, Edward, and Lester Chies are brothers who grew up in Columbia Heights, Minnesota. Donald and Lester Chies started a partnership called "Chies Brothers, Contractors" in 1955 and had that name filed as a trade name with the clerk of the Anoka County District Court in 1962. That partnership was incorporated in 1964 under the name of "Chies Brothers, Contractors, Inc." Donald, Edward, and Lester are involved in a partnership called "DEL Properties" which has been in existence for more than 7 years. It owns several apartment buildings. Edward Chies owns a construction company called "Edward Chies Construction Company."

Separate accounts in the name of "Chies Bros." have been in existence with the plaintiff, Johnson Bros. Oil Company, since the late 1950's. It was stipulated at trial that the amount still owing on these accounts was $18,138.03. The first account was an open account under the name of "Chies Bros." Gerald G. Johnson, president and owner of plaintiff company, testified that he has understood the term "Chies Bros." to include Donald

---

*Acting as Justice of the Supreme Court by appointment pursuant to Minn. Const. art. 6, § 2, and Minn. St. 2.724, subd. 2.

and Lester. He did not say that he ever thought Edward was included in the "Chies Bros." account or that he relied on Edward to pay the account. Johnson denied any knowledge that the partnership was incorporated in 1964. He denied a conversation testified to by Donald Chies in which Donald requested the account name be changed to that of the new corporation.

The record does indicate that Johnson had ample opportunity to learn that the Chies brothers had incorporated their business and that he was doing business with the corporation. However, much of the evidence on the issue of whether he had such knowledge was conflicting.

Two checks totaling $700 were written on the DEL Properties checking account to the order of "Chies Bros." and signed by Edward Chies. These checks were then endorsed by Donald Chies and given to plaintiff as payment on account. There was one check for $40 with DEL Properties as the payor, "Johnson Oil" as the payee, which was signed by Edward Chies. The circumstances under which this check was written are not explained.

We find very little evidence linking Edward Chies financially with his brothers, Donald and Lester, in the operation of their partnership or the corporation. Other than the one check, the only evidence linking Edward with his brothers and these accounts was their partnership in DEL Properties and the fact that their offices were located in the same office building but in different suites. On the other hand, Johnson testified that he understood the "Chies Bros." accounts to be for Donald and Lester. All three brothers testified that Edward was not affiliated in any manner with the construction company owned by Donald and Lester. This was confirmed by Edward's accountant. A truck driver and station attendant for plaintiff testified that he could not recall delivering any gas or selling any petroleum products to Edward Chies and charging it to the "Chies Bros." account. We find no evidence that Edward Chies ever overtly assured or even suggested to Johnson Oil that he would guarantee the debts of Donald and Lester.

The two determinative issues presented on this appeal are:

(1) Was the evidence sufficient to support the decision of the trial judge that Edward Chies was individually liable on the debt involved?

(2) Was the evidence sufficient to support the decision of the trial judge that Donald and Lester Chies were personally responsible for the debt involved?

1. The trial judge found in material part:

"That plaintiff's account under the title 'Chies Bros.' was continually used for the benefit of the defendants and each of them.

"That the plaintiff had no actual notice of the account of 'Chies Bros.' being an account of a particular co-partnership or corporation owned by any of the three individuals named as defendants, namely Donald Chies, Lester Chies and Edward Chies.

\* \* \* \* \*

"That Edward Chies, Donald Chies and Lester Chies have co-mingled their individual efforts, their separate corporations and trade name entities in various construction projects and in their dealings with the plaintiff's company.

\* \* \* \* \*

"That from all the facts presented and exhibits it appears that each of the defendants are indebted to the plaintiff regardless of the corporate entity or any other name under which one or more of them may have operated."

Plaintiff had the burden of proof. Our examination of the record discloses no testimony supporting a conclusion that the affairs of Edward were so commingled with those of Donald and Lester that Edward should be held responsible for the debts of either the corporation or his brothers. Johnson consistently indicated that he looked to Donald and Lester for payment of the debt. The only shred of evidence linking Edward with this obli-

gation is the unexplained check for $40 referred to above. In the overall picture, this is so insignificant that it must be disregarded.

Our statute of frauds, Minn. St. 513.01, requires that a promise to answer for the debt of another must be in writing and subscribed by the party charged therewith. Here, there is not a suggestion even of an oral promise by Edward that he would answer to plaintiff for the debts of his brothers.

For the reasons indicated, we find no basis upon which we can sustain the judgment to the extent that it holds Edward responsible for the debt involved.

2. On the issue of the personal responsibility of Donald and Lester, there was conflict in the evidence. We cannot say that there is no competent evidence to support the finding of the court that plaintiff had no adequate notice that it was dealing with the corporation instead of with the partnership or Donald and Lester individually.

This is unlike the situation in Wm. Mueller & Sons v. Chanhassen Redi Mix, 273 Minn. 214, 220, 140 N. W. 2d 326, 330 (1966), where, in reversing a verdict directed for the plaintiff against an individual for the debt of a corporation, we said:

"The facts clearly demonstrate that plaintiff dealt with Redi Mix as a corporate business. The books of original entry show the corporation as the debtor. All bills for accounts were made to the corporation. Nowhere in the evidence was there any dispute that the plaintiff had dealt with Redi Mix as a corporation; neither does it convincingly appear that plaintiff considered Studer personally liable for the debts of the corporation. Even counsel for plaintiff at oral argument appeared to recognize that the directed verdict against Studer was improper as there was no evidence to sustain such a conclusion. The result that follows, therefore, is that only the directed verdict against Redi Mix can stand, while the verdict against Studer must be reversed."

In Rule 52.01, Rules of Civil Procedure, it is stated:

"* * * Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."

We have recited the facts. While as factfinder we might not have found as the trial judge did, we have before us only the typewritten transcript of the testimony, while the trial judge had an opportunity to judge the credibility of the witnesses on an issue where the testimony was conflicting. The court could reasonably find that plaintiff relied upon the credit of Donald and Lester Chies and that Mr. Johnson was never informed, so far as the involved transactions are concerned, that he was dealing with the corporation. The court could, therefore, conclude that the debt was the obligation of these individuals. See, Salzberger v. Bundt, 283 Minn. 489, 168 N. W. 2d 687 (1969); Clover Leaf Creamery Co. v. Bjornstad, 168 Minn. 17, 209 N. W. 892 (1926); Brunswick-Balke Collender Co. v. Boutell, 45 Minn. 21, 47 N. W. 261 (1890).

Reversed as to the liability of Edward Chies; affirmed as to other defendants.