ST. CROIX ENGINEERING
CORP., Appellant,

v.

Mary Jo McLAY, as Personal Representative of the Estate of Gerald M. McLay, Respondent.

No. 50785.

Supreme Court of Minnesota.

May 1, 1981.

Lawton & Schivone, R. Wayne Griffing, St. Paul, for appellant.

John P. Alexis, St. Paul, for respondent.

SIMONETT, Justice.

The subject of this lawsuit is a series of five checks on the account of Mitronics, Inc., and signed by Gerald M. McLay, president of the corporation. The checks were issued to the appellant, St. Croix Engineering Corporation. When the checks were dishonored, St. Croix brought suit against Mitronics on the underlying obligation and obtained a judgment in the amount of $46,-984.38. Mitronics subsequently went into Chapter 11 bankruptcy proceedings. St. Croix then brought this suit against the estate of Gerald M. McLay (McLay died shortly after Mitronics went into Chapter 11 proceedings), claiming McLay was personally liable on the checks. St. Croix alleges that, because McLay's signature on each of the checks did not disclose his representative capacity, he was personally liable for the amount of the checks. Each of the checks in question bears the name, address, and logo of Mitronics, Inc., in the upper left-hand corner. The name of the payee is written in longhand as is the numerical dollar amount of the check. The written sum of the check is imprinted with a check machine. The checks were then signed by McLay as follows: "Gerald M. McLay" without any designation as to his representative capacity.

The issues presented by this appeal are: (1) Whether the trial court erred in striking testimony regarding conversations had with the decedent McLay as hearsay; and (2) whether the evidence was sufficient to support the trial court's finding that McLay signed the checks in his representative capacity.

1. At trial both plaintiff and defendant introduced testimony regarding conversations had by various witnesses with the

decedent McLay. The testimony introduced by plaintiff was received without objection. The testimony introduced by defendant was objected to as hearsay. At the close of the evidence, the trial court struck all testimony regarding conversations had with the decedent. St. Croix alleges this was error. We disagree.

First, St. Croix claims that the hearsay evidence received without objection should not have been stricken. It is well settled, however, that the trial court has the discretion to refuse to receive inadmissible evidence offered without objection. *See Watts v. Howard*, 70 Minn. 122, 123, 72 N.W. 840, 840 (1897). Therefore, if the evidence was hearsay, the trial court did not err in striking it.

Second, St. Croix argues that the testimony regarding conversations with McLay was admissible because it contained statements against interest. *See* Minn.R. Evid. 804(b)(3). While McLay is clearly unavailable, *see* R. 804(a)(4), our review of the evidence convinces us that McLay's statements were not against his interest at the time they were made. When McLay made the statements, his corporation had no money and he was confronted with a creditor who wanted to be paid. Any statement he made to ease the situation and get the creditor to wait was in his interest, not against it. Therefore, the trial court did not err in striking this testimony.

2. The question whether McLay signed in his individual or representative capacity is governed by Section 3–403 of the Uniform Commercial Code, as adopted in this state. Minn.Stat. § 336.3–403 (1980). We do not agree with appellant that the trial court misapplied this section. The section provides in part:

(2) An authorized representative who signs his own name to an instrument

(a) is personally obligated if the instrument neither names the person represented nor shows that the representative signed in a representative capacity;

(b) except as otherwise established between the immediate parties, is personally obligated if the instrument names the person represented but [does] not show that the representative signed in a representative capacity * * *.

Minn.Stat. § 336.3–403(2) (1980).

This is not a conclusive instance of liability; hence, parol evidence is admissible. Had the checks failed both to name the principal, Mitronics, and to disclose the representative capacity of the signer, McLay, the personal liability of McLay would be conclusively established. Minn. Stat. § 336.3–403(2)(a) (1980).[1] Parol evidence would have been inappropriate in such a case. But here we have checks which do name the principal but are signed by someone other than the principal and fail to disclose the representative capacity of the signer. As such, each instrument is ambiguous on its face and parol evidence is admissible by operation of section 336.3–403(2)(b) "to prove signature by the agent in his representative capacity." Official Comment, U.C.C. § 3–403. Thus a presumption of personal liability is created, a presumption which may be rebutted by parol evidence.

Next, in considering the parol evidence, the question is, what did the parties understand the checks to be at the time they were signed in Heck's presence? The trial court, in finding the checks were signed in a representative capacity, relied on the fact Heck knew McLay was doing business as a corporation; that plaintiff subsequently sued Mitronics, Inc., not McLay; and that 6 months after the first check was issued, Heck sent a letter to Mitronics, Inc., stating, in part, "Enclosed are photostatic copies of checks * * * received by St. Croix Engineering from Mitronics, Inc., which have not been honored. * * * Please advise as to your intentions on these checks * * *."

---

1. On the other hand, if McLay had written the word "president" under his signature, this would have clearly established his representative capacity and he would not be personally liable.

While some of these events are subsequent acts or declarations of the parties, such evidence is admissible and often "is entitled to great, if not controlling, influence in ascertaining their [the parties'] understanding of its [their contract's] terms." *Kastner v. Dalton Development, Inc.*, 265 Minn. 511, 517, 122 N.W.2d 183, 187 (1963).

We hold the trial court did not err. It was proper to find the above evidence sufficient proof of representative capacity, overcoming the presumption of personal liability in section 3–403. In addition, St. Croix had, prior to issuance of the checks, addressed its invoices to Mitronics, Inc. Thus one could infer from this fact and from the printed corporate name, address and logo on the upper left-hand corner of the check that St. Croix was receiving a corporate check, drawn on the corporation's account.

■ In deciding whether the presumption of personal liability is rebutted, the trier of fact may also consider business usage and custom. The presumption is more easily rebuttable in the instance of a corporate check, as here, than with a corporate note. J. White & R. Summers, *Handbook of the Law Under the Uniform Commercial Code* 405 (2d ed.1980) ("It is common for creditors of small corporations to demand that major officers personally obligate themselves on corporate notes. Yet it would be most unusual to demand the individual obligation of an officer on corporate checks * * *.").

Therefore, because of an ambiguity on the face of the checks, the trial court considered parol evidence and concluded it was the understanding of the parties that McLay had signed the checks in a representative capacity. Such an inquiry is contemplated by the Uniform Commercial Code, U.C.C. § 3–403, and the cases thereunder. *Antil v. Southwest Envelope Co.*, 601 S.W.2d 47 (Tex.Civ.App.1979), distinguishing *Griffin v. Ellinger*, 538 S.W.2d 97 (Tex.1976). We find the conclusion not clearly erroneous on the record before us.

Affirmed.